**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION—BALTIMORE)**

| | |
|---|---|
| BALTIMORE HOTEL CORPORATION, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Case No. 22-2147 |
| ) | |
| UNITED STATES INSTITUTE FOR THEATRE ) | |
| TECHNOLOGY INC., ) | |
| ) | |
| Defendant ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Case pursuant to 28 U.S.C. § 1332. Plaintiff is a Maryland corporation with its principal place of business in Baltimore, Maryland. Defendant is a New York corporation with its principal place of business in Liverpool, New York.

2. Upon service of process or waiver of service, this Court will have personal jurisdiction over the Defendant pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. Defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id*. The Circuit Court for Baltimore City, Maryland would have personal jurisdiction as to this Case under section 6-103(b)(1) of the Courts and Judicial Proceedings article of the Maryland Code, which states, "A court may exercise personal jurisdiction over a person, who . . . [t]ransacts any business . . . in the State . . ." In this Case, Plaintiff bring "a cause of action arising from" business transacted by Defendant in this State. *Id*. § 6-103(a).

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2). "[A] substantial part of the events or omissions giving rise to the [Plaintiff'] claim[s] occurred" in Baltimore, Maryland.

1

## PARTIES

4. Plaintiff owns the Hilton Baltimore Inner Harbor hotel, located at 401 West Pratt Street, Baltimore, Maryland 21201 (the "**Hotel**").

5. Defendant is a trade association that, from time to time, holds an annual convention for which it books "room blocks" of sleeping rooms in multiple hotels in a city to accommodate a large number of guests who have travelled to the city to attend the convention.

## FACTS

6. On December 21, 2017, Defendant entered into a "Hotel Agreement" with Plaintiff, a copy of which is attached to this Complaint as **Exhibit A** (the "**Agreement**").

7. Under the Agreement, Plaintiff was to provide accommodations in the Hotel for guests attending Defendant's 2022 USITT Annual Conference & Stage Expo (the "**Conference**") in Baltimore. The Conference was scheduled to take place March 2-5, 2022.

8. The Hotel was one of several hotels in Baltimore in which Defendant booked space to accommodate guests attending the Conference. Most or all of the actual Conference events were scheduled to be held at the Baltimore Convention Center.

9. The Agreement provided for Defendant to use 2,974 room nights in the Hotel from February 26 through March 6, 2022, which would generate "Total Anticipated Revenue" to Hotel Owner in the amount of $673,136.00.

10. The Agreement includes two liquidated damages provisions. First, a section titled "Cancellation Policy" provides a formula for calculating liquidated damages owed by Defendant to Hotel Owner "should [Defendant] cancel [its] Event for any reason other than due to a valid Impossibility occurrence, including changing [its] meeting site to another hotel . . ." Agreement p. 10. This section states, in pertinent part:

2

**Cancellation Policy**

Hotel has offered the favorable sleeping room rates and other concessions in this Agreement based upon the Total Anticipated Revenue for your Event, plus additional revenue that the Hotel anticipates we would receive from providing additional services to the Group and your attendees at additional charge. If this Agreement is cancelled by Group, the parties agree that the Hotel will have los the revenue represented by this Agreement, and also the opportunity to offer your unused facilities to others either individually or as part of another block and we will incur additional costs in attempting to resell inventory that was already sold to you. The parties agree that since the exact amount of such damages will be difficult to determine, the liquidated damage clauses provided for in this Agreement are a reasonable effort by the parties to agree in advance on the damages that the Hotel will suffer due to a cancellation. Therefore, Group agrees that should Group cancel your Event for any reason other than due to a valid Impossibility occurrence, including changing your meeting site to another hotel, Group will pay as liquidated damages to the Hotel a percentage of the Total Anticipated Revenue for your Event, plus any applicable state and local taxes as required by law, as follows:

| **Date of Hotel's Receipt of Cancellation Notice** | **Percentage of Total Anticipated Revenue** | **Amount of Cancellation Damages** |
|---|---|---|
| * * * | | |
| Cancellation between October 1, 2021 and the date of arrival | 65% = | $414,138.40 |

Total Anticipated Revenue for this Event is **$637,136.00.**

The parties agree that the sliding scale of damages above is intended to reflect that the closer in time to the date of your Event that a cancellation occurs, the less likely it is that Hotel will be able to replace any or all of your business with comparable business.

* * *

11.   A second liquidated damages section in the Agreement is titled "Sleeping Room Performance Policy." This section provides a formula for calculating liquidated damages that

3

Defendant would have owed [Hotel Owner] "if the contracted Event [were] held as scheduled," but Defendant "d[id] not use all of the sleeping rooms in [its] Room Block . . ." Agreement p. 9. This section states, in pertinent part:

> **Sleeping Room Performance Policy**
> The Total Sleeping Room Nights Reserved under this Agreement will generate $637,136.00 in revenue for Hotel ("Total Anticipated Sleeping Room Revenue"). If you do not use all of the sleeping rooms in your Room Block, you agree that the Hotel will suffer damages because the Hotel will have lost the opportunity to offer your unused rooms to others either individually or as part of another block and the Hotel will incur additional costs in attempting to resell inventory that was already sold to you. The parties agree that since the exact amount of such damages would be difficult to determine, the liquidated damages clauses provided for in this Agreement are a reasonable effort by the parties to agree in advance on the damages that the Hotel will suffer due to your lack of performance. Therefore, if the contracted Event is held as scheduled, Hotel will not seek performance damages if Group achieves a minimum of 70% of the Total Anticipated Sleeping Room Revenue. Should Group achieve less than this amount, Group agrees to pay Hotel, as reasonable liquidated damages and not as a penalty, the difference between 70% of the Total Anticipated Sleeping Room Revenue and the actualized guest room revenue received by Hotel for rooms used and paid for as part of the official Room Block, plus any applicable state and local taxes as required by law, as a reasonable estimate of the Hotel's losses on sleeping rooms, ancillary revenue, costs of sale and other losses.

\* \* \*

12. The Agreement also includes the following section:

> **Termination/Force Majeure**
> Should events beyond the reasonable control of the Hotel and USITT/Connections Housing, including but not limited to acts of God, declaration of war in the United States, governmental civil disturbance within 5 miles of the Hotel, government regulation, terrorist attacks in the city in which the Hotel is located, curtailment of transportation either in the conference city or in the countries/states of origin of the attendees that prevents at least 40% of the attendees from arriving for the first peak night of the Event), shortages or disruption of the electrical power supply causing blackouts or rolling blackouts (in the city where the Hotel is

4

> located), or any other conditions occur making it commercially impracticable, illegal, or impossible to fully perform under this Contract as the Parties originally contracted, the affected party may terminate this Contract, without liability, upon written notification.

Agreement p 9.

13. On January 13, 2022, David Grindle, the Executive Director of Defendant, sent an email to Greg Brown, the General Manager of the Hotel, with the following text:

> Dear Greg:
>
> This letter serves as written notice pursuant to the Termination/Force majeure paragraph found on page 9 of the contract signed on 12 December 2017 that USITT is exercising its right to terminate the contract without liability.
>
> The conditions make it commercially impracticable to fully perform under this contract as originally contracted.

A copy of this email is attached to this Complaint as **Exhibit B**.

14. Neither Defendant's January 13, 2022 email nor any subsequent correspondence by Defendant to Plaintiff identifies the "conditions" that Defendant alleged made performance of its obligations under the Agreement "commercially impracticable."

15. On January 14, 2022, Greg Brown replied to David Grindle's email from the preceding day. Among other things, Mr. Brown stated the following in his reply:

> . . . [A]s of now USITT is moving forward with its Annual Conference and Stage Expo at the Baltimore Convention Center in March 2022 and attendees are still coming to Baltimore to attend the Expo. Thus, it is still legal, possible and commercially practicable for USITT to fully perform under the Agreement. Accordingly, per the terms of the Agreement, the Hotel is entitled to cancellation damages in the amount of $414,138.40 based on USITT's cancellation of the Agreement.
>
> * * *
>
> . . . Rather than triggering the cancellation damages provision, the Hotel would much prefer that USITT rescind its cancellation. If

> USITT refuses to do so, then the Hotel will have no option but to pursue all available legal remedies to collect the $414,138.40 in cancellation damages that are due to it. We sincerely hope that will not prove necessary.

A copy of Mr. Brown's January 14, 2022 email is attached to this Complaint as **Exhibit C**.

16. Defendant did not rescind its cancellation.

17. Defendant held the Conference in Baltimore as scheduled. Conference attendees stayed at other hotels in Baltimore at which Defendant had booked rooms. Defendant did not direct any attendees to Plaintiff's Hotel.

18. On February 3, 2022, Plaintiff sent Defendant a letter enclosing "an invoice in the amount of $414,138.40, plus applicable tax, which represents the cancellation fee USITT owes the Hilton Baltimore Inner Harbor per the terms of the December 21, 2017 Hotel Agreement executed between USITT and the Hotel." Copies of the letter and enclosed invoice are attached to this Complaint as **Group Exhibit D**.

19. Defendant has responded to Plaintiff's invoice in writing at least twice, in letters dated March 8, 2022 and March 14, 2022. In both letters, Defendant refuses to pay the invoice.

## COUNT I
## BREACH OF CONTRACT

20. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 19 of this Complaint as though fully set forth herein.

21. The Agreement is a legally binding contract between Plaintiff and Defendant.

22. By David Grindle's email of January 13, 2022, Defendant anticipatorily repudiated the Agreement without cause.

23. Defendant's anticipatory repudiation of the Agreement was a breach of the Agreement.

24. Defendant did not have cause under the Force Majeure section of the Agreement to terminate the Agreement.

25. There was no "a valid Impossibility occurrence" that exempts Defendant from an obligation to pay liquidated damages under the Cancellation Policy section of the Agreement.

26. Defendant's breach of the Agreement caused damages to Plaintiff.

27. Plaintiff was unable to resell enough sleeping room nights to entitle Defendant to any credit against these liquidated damages under the "Resale" section of the Agreement.

28. Defendant's breach of the Agreement entitled Plaintiff to liquidated damages in the amount of $414,138.40 under the "Cancellation Policy" section of the Agreement.

29. Plaintiff performed all of the obligations that Plaintiff was required to perform under the Agreement before David Grindle sent his email of January 13, 2022.

## COUNT II
## UNJUST ENRICHMENT

30. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 19 of the Complaint as though fully set forth herein.

31. By holding the room block for Defendant and performing other obligations under the Agreement until at least January 14, 2022, Plaintiff gave Defendant the option of using the Hotel for the Conference and allowed Defendant to advertise to prospective Conference attendees that the Hotel would be available. This conferred a benefit on Defendant.

32. Defendant was aware of this benefit.

33. Defendant retained this benefit until January 13, 2022, in a manner that compensation is due to Plaintiff.

34. Defendant, in equity and good conscience, should not be allowed to retain this benefit.

35. The applicable liquidated damages under the "Cancellation Policy" section of the Agreement—$414,138.40—are a reasonable measure of the value of this benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Court enter a judgment awarding Plaintiff Four Hundred Fourteen Thousand One Hundred Thirty-Eight and 40/100 Dollars ($414,138.40) in damages in addition to pre-judgment and (if applicable) post-judgment interest.

Respectfully submitted,

**BALTIMORE HOTEL CORPORATION**

Dated: August 24, 2022

By: **/s/ Robert W. Lannan**
Robert W. Lannan
its attorney

Robert W. Lannan (D.Md. Bar. No. 28937)
LANNAN LEGAL PLLC
1717 K Street, N.W., Suite 900
Washington, D.C. 20006
Telephone: (202) 223-8901
Facsimile: (202) 747-7760
robert.lannan@lannanlegal.com

8